UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL W. FRANKLIN,                          :

                Plaintiff,                      :            <u>OPINION AND ORDER</u>

      -v.-                                   :            19 Civ. 3516 (GWG)

                              :

ANDREW SAUL,
Commissioner of Social Security                :

              Defendant.                    :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Michael Franklin seeks review of the Commissioner of Social Security's denial

of his application for disability insurance benefits.  He now moves for remand for further

administrative proceedings and the Commissioner moves for judgment on the pleadings.[1]  For

the reasons stated below, the Commissioner's motion is granted, and Franklin's motion is denied.

I.  <u>BACKGROUND</u>

      A.  <u>Procedural History</u>

      On February 8, 2016, Franklin filed an application for social security disability insurance

benefits with an alleged disability onset date of June 13, 2014.  SSA Administrative Record, filed

August 8, 2019 (Docket # 14) ("R.") at 15.  His claim was denied on July 1, 2016.  <u>Id.</u>  A hearing

---

[1]  <u>See</u> Motion to Remand to Social Security Administration, filed Nov. 6, 2019 (Docket # 19); Memorandum of Law in Support of Motion to Remand to Social Security Administration, filed Nov. 6, 2019 (Docket # 20) ("Pl. Mem."); Motion for Judgment on the Pleadings, filed Feb. 5, 2020 (Docket # 23); Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed Feb. 5, 2020 (Docket # 24) ("Def. Mem."); Reply Memorandum of Law in Opposition to Motion for Judgment on the Pleadings, filed Feb. 24, 2020 (Docket # 25) ("Pl. Reply"); Reply Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed March 11, 2020 (Docket # 27) ("Def. Reply").

took place on May 30, 2018, before an Administrative Law Judge ("ALJ").  Id.  On June 6, 2018, the ALJ denied Franklin's claim in a written decision.  R. 15-25.  On February 19, 2019, the Appeals Council denied Franklin's request for review.  R. 1.  On April 20, 2019, Franklin filed this action (Docket # 1).

B.  Medical Evidence

Franklin and the Commissioner have both provided summaries of the medical evidence in the record.  See Pl. Mem. 6-13; Def. Mem. 2-10.  The summaries are substantially consistent with each other.  Additionally, the Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Aug. 13, 2019 (Docket # 15) ¶ 5, and neither party has done so.  Accordingly, the Court adopts both parties' summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

C.  The Hearing Before the ALJ

Franklin's hearing before the ALJ occurred via video on May 30, 2018, with Franklin in Goshen, New York and the ALJ in White Plains, New York.  R. 15.  At the hearing, Franklin gave testimony and was represented by Tara Johnson.  Id.  Also present and testifying was Christine Ditrinco, a vocational expert ("VE").  Id.  Before testimony was taken, the ALJ observed that, while taking the oath, Franklin could not lift his right hand above chest level. R. 39.

Franklin testified that he lives alone with his two children, ages 13 and 9.  R. 42.  His home was in foreclosure and he already had to give his car back.  R. 48-49.  He sometimes

2

borrows his daughter's car.  R. 53.  However, he can only drive with his left hand and has to put

the key into the ignition with his left hand.  R. 40, 53.  He has been out of work since 2014, see

R. 44-45, but has tried to work and could not work a full day, R. 49.  Even if he only worked for

a short period of time, there were days where he was "stuck in bed or I'm too tired" and he was

"putting other people at risk."  Id.

      Franklin injured the rotator cuff of his right shoulder, which is his dominant side, while

working in construction.  R. 40-41.  He had surgery and testified that he will need a second

surgery, which has only a 50% chance of being successful.  See R. 41.  He testified to being out

of work for four years.  Id.  More recently he did some work for a landscaping company as a

flagger but could not do it because he "couldn't stand all day" due to his bad knees and "ended

up in bed for a week."  R. 42-43.  His knees were injured in an accident in 2003 and continued to

bother him, but he was able to work.  R. 43.  He testified to having two knee surgeries around

2004, but they were unsuccessful.  Id.  Since being out of work, Franklin testified that his knees

had worsened.  R. 44.

      Franklin stated that he has difficulty sitting for long periods of time because of his back.

Id.  His doctors "want to replace the disc and fuse it."  Id.  He has difficulty turning his head, but

the pain is "off and on."  Id.

      In response to questions from Johnson, Franklin testified that his condition had worsened

since being out of work, which was in 2014.  R. 45.  He cannot sleep eight hours a night because

of pain.  R. 46.  When asked to rank his "biggest limitations" he said "shoulder first.  My neck.

My neck and shoulder together . . . And then it would just go to my lower back, knees . . . I also

have two scaffold [sic] fractures in both hands."  Id.

When asked about his shoulder surgery in 2015, Franklin reported he felt worse afterwards because he was limited in his ability to move.  R. 47.  Generally, as time went on, he experienced less mobility.  R. 48.  Franklin does not have any pain-free days.  Id.  After his surgery, the doctors tried injections, which were unsuccessful.  R. 49-50.  He also has been put on opiates for the pain, which helped, but he did not want to be on opiates because there was "more pain when I was coming off."  R. 50.  He testified to taking over-the-counter Ibuprofen, which helps a little.  Id.

The VE also testified.  The ALJ posed a hypothetical scenario to the VE:

Suppose we have a person of the claimant's age, education and work experience. And let's assume that he is right hand dominant but going to substantially reduce his right upper extremity and dominant extremity for reaching, handling and for fingering.  And let's suppose he could not lift it to beyond chest level and could only lift it — carry a minimum weight.  Maybe . . . Two pounds, weight carrying, capability.  And let's suppose he can carry up to ten pounds where it is the left non dominant right extremity.  Are there any jobs that such a person could do?  I left out any exertional impairments to the extent of walking.

R. 54-55.  He added that the individual is limited to unskilled work and to exclude jobs that "require bilateral manual dexterity."  R. 56.  The VE testified such an individual could perform work in the national economy as a "host," "usher," or "[c]ounter clerk."  Id.  She acknowledged the job as a counter clerk "require[d] frequent reaching and handling, occasional fingering."  R. 57.  The positions are classified at the light exertional level because of the standing and walking requirements.  R. 56.  The VE added,

the jobs I cited in response to [the ALJ's first hypothetical question], all require occasional reaching, handling and fingering.  I really didn't have to — there really wasn't any deviation.  You consider they're all light, occasional.  The only deviation would be my consideration of the lifting there.  Not being consistent with light work.  So I did rely on my experience only with regards to that in my analysis of those kind of job titles. . . . the DOT doesn't discriminate between lateral and overhead reaching.  So again, I did rely on my experience.

4

R. 60.

The VE also responded to questions from Franklin's attorney.  The VE was asked if a limitation on the "dominant, upper extremity" erodes the sedentary or light job base more, to which the response was the sedentary job base.  R. 58-59.  The VE was then asked about the ALJ's hypothetical and the "light" jobs suggested, specifically whether "being able to be up on your feet standing and walking for at least six hours of an eight hour work day" made these "light" jobs, to which she responded, "Yes."  R. 59.  Franklin's attorney then proposed a new hypothetical:

> if an individual was limited to sedentary work . . . . And in terms of upper extremity limitations — was limited with their dominant arm, in the sense there is no bilateral dexterity, and they were limited with the dominant arm with no reaching overhead, only occasional reaching in all other directions and no lifting and carrying with that dominant arm . . . . Is that a complete erosion of the work base or is there still jobs that are available at the sedentary level?

Id.  The VE stated "if I just considered sedentary, there are not really any viable occupations." Id.

D.  The ALJ's Decision

The ALJ denied Franklin's application on June 6, 2018.  R. 25.  First, the ALJ found that Franklin met the insured status requirements of the SSA through December 31, 2019.  R. 17. Then, following the five-step test set forth in SSA regulations, the ALJ found at step one that Franklin had not engaged in "substantial gainful activity" during the time between his alleged disability onset date — June 13, 2014 — and the date of the decision (the "relevant period").  Id. Franklin briefly worked part-time for a construction company, but that did not rise to the level of substantial gainful employment.  Id.  At step two, the ALJ found that during the relevant period,

5

Franklin suffered from "severe impairments" of "an impairment of the upper right extremity; a back impairment; and bilateral knee impairments."  Id. (citation omitted).

At step three, the ALJ found that none of Franklin's severe impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").  Id.  In reaching this conclusion, the ALJ gave particular attention to listings 1.02 and 1.04.  R. 18.

With respect to listing 1.02, major dysfunction of a joint, the ALJ determined Franklin's shoulder injury did not satisfy the requirements of the listing because,

> The medical evidence does not demonstrate the requisite degree of gross anatomical deformity, pain or limitations substantiated by diagnostic imaging, and resulting in an inability to ambulate effectively or in an inability to perform fine and gross movements effectively, . . . [Franklin] has established an impairment of the upper right dominant extremity, but is still capable of using that limb occasionally for work activities.

Id.  His knee pain likewise did not meet the listing,

> because there is no evidence of a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively.

Id.

With respect to listing 1.04, disorders of the spine, the ALJ determined

> The claimant has experienced objective medical impairments in the lumbar and cervical spines several years ago but, as of the alleged onset date, the undersigned is persuaded by the overall medical record that the claimant's degenerative disc disease of the lumbar spine is not of the severity described in section 1.00 et seq.

R. 18-19.  The ALJ also noted that "[n]o treating or examining physician has opined that the claimant's impairments meet the criteria of any Listing."  Id.

Before moving to step four, the ALJ addressed Franklin's residual functional capacity ("RFC"). R. 19-23. The ALJ noted that he must first determine "whether there [was] an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." R. 20. Second, the ALJ noted that he must "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." Id. The ALJ found that Franklin had the RFC

> to perform sedentary-light exertion level work in that he is able to sit for a total of eight hours and stand/walk for a total of seven hours during the course of an 8-hour work day; and is able to lift/carry objects weighing a maximum of 10 pounds with the nondominant upper left extremity but only 2 pounds with the dominant upper right extremity. He is able to perform only occasional reaching, handling and fingering with the dominant right upper extremity but cannot use that limb above chest height.

R. 19. In making the RFC determination, the ALJ considered Franklin's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," R. 19-21; the objective medical evidence and other evidence, R. 21-22; and opinion evidence in accordance with SSA regulations, R. 22-23. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." R. 20.

With respect to opinion evidence, the ALJ gave significant weight to the opinion of Dr. Dinovitser, "a specialist in osteopathic medicine," because the ALJ found "[h]is findings were set forth in a detailed, narrative report which is essentially consistent with the observations

made by other physicians who have examined the claimant."  R. 22-23.

Having determined Franklin's RFC, the ALJ concluded based on the VE's testimony that Franklin could not perform his past work of a construction worker.  R. 23.  At step five, the ALJ considered Franklin's RFC and his age, education, and work experience in determining "there are jobs that exist in significant numbers in the national economy" that Franklin could perform. R. 24 (citation omitted).  Specifically, although the ALJ found that Franklin's "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations," given all the evidence in the record, including testimony from the VE, the ALJ found that Franklin could perform the requirements of occupations such as "host/hostess restaurant," "usher," and "counter clerk."  Id.  Accordingly, the ALJ concluded that Franklin was not disabled as defined by the Act.  R. 25.

## II.  APPLICABLE LAW

### A.  Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court

finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). The "threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

B. Standard Governing Evaluations of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord id.

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his

"impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  Id. §§ 423(d)(2)(A),

1382c(a)(3)(B).

      To evaluate a claim of disability, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d

Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y.

2016).

      Regulations issued pursuant to the Act set forth a five-step process that the Commissioner

must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see

also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity."  20

C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in

substantial gainful activity, the Commissioner must decide if the claimant has a "severe

medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c),

416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be

found disabled regardless of his age, education, or work experience.  See id.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must

review the claimant's residual functional capacity ("RFC") to determine if the claimant is able to

do work he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past

relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her

age, education, and work experience, permits the claimant to do other work.  Id.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she

will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the

burden of proof on all steps except the final one — that is, proving that there is other work the

claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

 C.  The "Treating Physician" Rule

 Under the so-called "treating physician" rule, the ALJ must generally give "more weight

to medical opinions" from a claimant's "treating source" — as defined in the regulations —

when determining if the claimant is disabled.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2]

Treating sources, which includes some professionals other than physicians, see 20

---

[2]  Although the SSA has since revised its rules to eliminate the treating physician rule, because the claim here was filed before March 27, 2017, the rule applies in this case.  See, e.g., Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations, such as consultative examinations."  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).  The Second Circuit has summarized the deference that must be accorded the

opinion of a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate
> specific procedures that an ALJ must follow in determining the appropriate
> weight to assign a treating physician's opinion.  First, the ALJ must decide
> whether the opinion is entitled to controlling weight.  "[T]he opinion of a
> claimant's treating physician as to the nature and severity of [an] impairment is
> given 'controlling weight' so long as it 'is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent with the other
> substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (third
> brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).  Second, if the ALJ
> decides the opinion is not entitled to controlling weight, it must determine how
> much weight, if any, to give it.  In doing so, it must "explicitly consider" the
> following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature,
> and extent of treatment; (2) the amount of medical evidence supporting the
> opinion; (3) the consistency of the opinion with the remaining medical evidence;
> and (4) whether the physician is a specialist."  Selian[, 708 F.3d at 418] (citing
> Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  At both steps, the
> ALJ must "give good reasons in [its] notice of determination or decision for the
> weight [it gives the] treating source's [medical] opinion."  Halloran v. Barnhart,
> 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R.
> § 404.1527(c)(2)). . . .  An ALJ's failure to "explicitly" apply the Burgess factors
> when assigning weight at step two is a procedural error.  Selian, 708 F.3d at 419-
> 20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019).  Accordingly, the Second Circuit has

stated that it will "not hesitate to remand when the Commissioner has not provided 'good

reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding

when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for

the weight assigned to a treating physician's opinion."  Halloran, 362 F.3d at 33; accord Estrella,

925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

Nonetheless, the Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran, 362 F.3d at 32 (citation omitted).  In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).  Finally, a "slavish recitation of each and every [factor listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'"  Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

## III.  DISCUSSION

Franklin makes two arguments in support of his motion for judgment on the pleadings: 1) the RFC is not supported by substantial evidence, Pl. Mem. at 15; and 2) the ALJ "failed to analyze the medical evidence and other evidence of record correctly," id. at 17 (some capitalization omitted).  We address these arguments in turn.

### A.  The ALJ's RFC

The ALJ determined Franklin's RFC to be,

sedentary-light exertion level work in that he is able to sit for a total of eight hours and stand/walk for a total of seven hours during the course of an 8- hour work day; and is able to lift/carry objects weighing a maximum of 10 pounds with the

nondominant upper left extremity but only 2 pounds with the dominant upper
right extremity.  He is able to perform only occasional reaching, handling and
fingering with the dominant right upper extremity but cannot use that limb above
chest height.

Pl. Mem. at 15 (quoting R. 19.).  Franklin raises two issues as to the RFC: that the sit and

stand/walk duration set forth in the RFC is unsupported and that the RFC as a whole is not

supported by a credible medical opinion.  See Pl. Mem. at 15-16.

### 1. Sitting, Standing, and Walking Durations in the RFC

As to Franklin's argument regarding his ability to sit, stand, and walk, Franklin argues

"one would be hard pressed to find even a healthy individual that could sit for 8 hours per 8-hour

workday or stand for 7 hours per 8-hour workday."  Id. at 15.  However, even in a sedentary

position it is understood that a person would take breaks.  See Social Security Ruling 96-9P,

1996 WL 374185, at *6 (SSA July 2, 1996) ("In order to perform a full range of sedentary work,

an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour

workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour

intervals."); see also Quintana v. Colvin, 2017 WL 752187, at *16 (S.D.N.Y. Feb. 27, 2017)

("Sedentary jobs require sitting for approximately six non-continuous hours in an eight-hour

workday") (emphasis added).  The same applies to the walking and standing requirements of

light work.  See Social Security Ruling 83-10, 1983 WL 31251, at *6 (SSA January 1, 1983)

("the full range of light work requires standing or walking, off and on, for a total of

approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the

remaining time.").

Franklin argues that the ALJ erred in rejecting the notion that Franklin's "old" knee and

back injuries rendered him unable to work.  See Pl. Mem. at 15.  But, as the ALJ specifically

noted, Franklin had "subsequently returned to construction work and was earning at SGA levels from 2010 up until the date of right upper extremity injury . . . [H]e registered only minor, intermittent problems in these areas <u>subsequent</u> to June 13, 2014 (and received no specific medical treatment in connection therewith)."  R. 21 (emphasis in original).  This statement was supported by the record.  <u>See</u>, <u>e.g.</u>, R. 219 (Franklin reported on May 15, 2015, "[s]ince he is not working at this time the knee pain has slightly gotten better for he is not doing the manual labor"); R. 226 (May 8, 2015, report of back pain after Franklin fell off a dumpster); R. 241 (February 6, 2015, reporting the same).  The ALJ acknowledged that Franklin "testified that he has two 'bad knees' and a cervical condition" but noted that "the medical evidence demonstrates 'medical improvement' with respect to these conditions."  R. 20 & n.2.  Such improvement was borne out by the record.  <u>See</u>, <u>e.g.</u>, R. 219 (May 15, 2015, report stating knee has improved since not working); R. 221 (Finding Franklin's "[c]ondition is stable" on May 15, 2015); R. 230 (normal physical exam on May 8, 2015).

Franklin argues that he sought treatment for work-related issues during the relevant period only because he had no health insurance, but "credibly testified that his back, knee and other musculoskeletal impairments have gotten worse due to lack of use and exercise."  Pl. Mem. at 15.  But Franklin did not testify that the lack of medical evidence to support his knee and back conditions was due to his lack of insurance; nor did he list his knees or back as reasons why he could not work on his application for benefits, <u>see</u> R. 161.  The record does show some medical treatment during the relevant period for moderate knee pain, which was improving, and the recommended course was conservative treatment.  <u>See</u> R. 219-21.  Further, the fact that Franklin was encouraged to modify his activity to avoid pain and injury does not necessarily indicate that he could not work, as Franklin argues, <u>see</u> Pl. Mem. at 16, but rather could properly be

interpreted by the ALJ as a direction merely that he should avoid activities that risk injury.

Franklin argues that "[t]he ALJ's finding that Plaintiff's knee pain had improved since he stopped doing manual labor (i.e., stopped working) is proof in and of itself that Plaintiff cannot do the kind of work required by the ALJ's RFC." Pl. Mem. at 16 (citing R. 21). But there was no evidence of a causal connection between Franklin's cessation of manual labor and the improvement in his knees and thus the ALJ was not obligated to conclude the two events were connected. In any event, the RFC found by the ALJ provides that Franklin can sit for eight hours or stand/walk for seven at a light exertion level. See R. 19. He previously was engaged in the medium to heavy-level work of a construction worker. See R. 23. If in fact his prior work resulted in knee pain, there is no reason borne out by the record to conclude that the light work called for in the RFC would result in similar knee pain.

   2. Medical Opinions

Franklin takes issue with the "significant evidentiary weight" given to Dr. Dinovitser's opinion because "he provided only a cursory, one-time examination of Plaintiff." Pl. Mem. at 16 (citing R. 22-23); see also Pl. Reply at 3-4. Franklin argues "there was left no credited opinion evidence by any of Plaintiff's treating sources" and "[t]he ALJ's RFC cannot hang merely on a flimsy statement by a one-time examiner whose examination was so remote in time that he did not even review the entire available record prior to the hearing." Id. He also argues that the workers' compensation opinions and recommendations should have been "credited for their consistent warnings to modify activities to avoid injury and pain, and to continue PT so that function is preserved as much as possible." Id.

First, it is unclear what Franklin means by his attack on Dr. Dinovitser's report as "cursory" and "remote in time." Pl. Mem. at 16. The examination took place in June 2016, two

years after the onset date, and there is no indication from his detailed report that his examination was "cursory."  <u>See</u> R. 746-49.

As to the manner in which the ALJ weighed the medical evidence in determining Franklin's RFC, the ALJ noted the opinions of Dr. Jones, who determined Franklin has a "70% Schedule Loss" in his upper right extremity, R. 767, and Dr. Dunkelman, who stated that Franklin should "avoid overhead work" and should avoid lifting more than 10 pounds of weight, <u>see</u>, <u>e.g.</u>, R. 752, 757.  Inasmuch as the RFC limits Franklin's range and use of his right shoulder, the RFC comports with these recommendations.  Additionally, neither of these opinions mentions knee or back restrictions and the limitations on the upper right extremity are reflected in the RFC.  <u>See</u> R. 19 ("lift/carry objects weighing a maximum of 10 pounds with the nondominant upper left extremity but only 2 pounds with the dominant upper right extremity . . . only occasional reaching, handling and fingering with the dominant right upper extremity").

These opinions are also consistent with that of Dr. Dinovitser, who stated Franklin had marked limitations in his upper-right extremity.  <u>See</u> R. 749.  Thus, the Court disagrees with Franklin's contention that "Dr. Dinovitser stands alone in his assessment."  Pl. Reply at 3. Furthermore, unlike the other doctors, Dr. Dinovitser considered Franklin's ability to sit, stand, and walk and assessed no limitations.  <u>See</u> R. 749.  As to the argument that Dr. Dinovitser did not have the benefit of a full record, Dr. Dinovitser had the benefit of examining Franklin himself.  <u>See</u> <u>id.</u>  Furthermore, the record that followed Dr. Dinovitser's June 2016 opinion was focused on Franklin's right shoulder problems, and particularly in relation to his workers' compensation claim.  <u>See</u> R. 751-789.  None of the latter-adduced evidence contradicts

17

Dr. Dinovitser's report.[3]  Finally, where the medical evidence supports the opinion of a one-time examiner, the ALJ may properly choose to give greater weight to that opinion.  See Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order).  Of course, as already discussed, the issue before the Court is not whether substantial evidence supports the claimant's position but rather whether substantial evidence supports the Commissioner's position.  Johnson, 563 F. Supp. 2d at 454.

Finally, the RFC does not ignore the fact, as Franklin argues, that Franklin was warned that he should modify activities to avoid injury and pain, and to continue physical therapy.  See Pl. Mem. at 16.  The RFC is consistent with these warnings because sedentary-light work represents a far lower level of exertion than Franklin's previous construction work.

Franklin does not specifically invoke the treating-physician rule, though he does assert that the ALJ did not obtain an opinion from a "treating source[]."  Pl. Mem. at 16; see also Pl. Reply at 3.  Nevertheless, the ALJ did not run afoul of the treating-physician rule.  Dr. Uhorchak would be considered a treating physician inasmuch as Franklin saw him many times.  However, despite being asked, Dr. Uhorchak did not give a medical opinion regarding Franklin's condition for purposes of assessing any disability for social security purposes.  See R. 32.  The only opinion from Dr. Uhorchak as to Franklin's limitations addresses only Franklin's shoulder injury and was assessed for workers' compensation purposes.  See R. 784.  The ALJ acknowledged this opinion but disregarded it because the standard for workers' compensation is different than for social security.  See R. 22.  The ALJ acted properly in doing so.  See, e.g., Post v. Colvin, 2015 WL 1454931, at *8 (S.D.N.Y. Mar. 31, 2015) ("[The ALJ] correctly observed that [certain]

---

[3] Chronic neck, back, and knee pain are mentioned in Dr. Dunkleman's reports, see, e.g., R. 754, but are not referred to under his objective medical findings or in Dr. Dunkleman's

opinions were not instructive because they were given in the context of a Workers'

Compensation claim.") (collecting cases); Ramirez v. Astrue, 2014 WL 2520914, at *10

(W.D.N.Y. Mar. 28, 2014) ("Disability opinions under Workers' Compensation law are entitled

to little weight given that Social Security law is different than Workers' Compensation law.")

(citation omitted); see also 20 C.F.R. § 404.1504 ("[A] decision by any other governmental

agency or a nongovernmental entity about whether [a claimant is] disabled . . . is not binding on

[the SSA] . . . ."); Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) (Social Security disability

determinations "are not geared to a percentage of disability, as are worker's compensation

disability conclusions" and thus "the ALJ could reasonably disregard so much of the physicians'

reports as set forth their conclusions as to [the claimant's] disability for worker's compensation

purposes.").  Furthermore, in giving weight to the opinion of Dr. Jones, the ALJ noted that it was

"a more quantified evaluation [than the other workers' compensation opinions] that is consistent

with a finding that the claimant was only able to perform work tasks with his upper right

extremity occasionally."  R. 22.  Accordingly, the ALJ did not run afoul of the treating-physician

rule by not giving more weight to the opinion of Dr. Uhorchak.

   B.  Analysis of the Record

   Franklin makes a series of arguments to support his contention that the ALJ "failed to

analyze the medical evidence and other evidence of record correctly."  Pl. Mem. at 17 (some

capitalization omitted).

   Franklin takes issue with the ALJ determining that his back and knee impairments are

"severe" but did not prevent him for working.  Pl. Mem. at 18.  Of course, the governing

regulations recognize that even if an impairment is severe, a claimant may still be capable of

---

assessment and treatment plan, see, e.g., R. 754-55.

work.  See Burgess, 537 F.3d at 120 (claimant may be found disabled only if a severe

impairment is of "such severity that [the claimant] is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy") (citation and internal quotation

marks continued).  Franklin specifically takes issue with the ALJ's acknowledgement that

Franklin's condition was improving, stating that "'medical improvement' does not mean that an

individual is free of impairments which might prevent him from engaging in SGA."  Pl. Mem. at

18.  This argument misses the mark because the existence of an impairment does not in and of

itself prevent someone from being able to work.

Franklin argues that Dr. Dinovitser's opinions do not "comport with his clinical findings

on examination."  Pl. Mem. at 18.  Franklin goes on to list items in the record from November

2014 through May 2015 where he complained of back pain and doctors reported various spinal

impairments.  Id.; see also Pl. Reply at 4.  We disagree that Dr. Dinovitser's report was internally

inconsistent.  Dr. Dinovitser examined Franklin in June 2016 and observed that he "appeared to

be in no acute distress.  Gait normal.  Can walk on heels and toes without difficulty.  Squat full.

Stance normal.  Used no assistive devices.  Needed no help changing for exam or getting on and

off exam table.  Able to rise from chair without difficulty."  R. 746-47.  He noted no issues in

Franklin's spine or knees but did note reduced mobility of the right shoulder and mild-to-

moderate tenderness around the joint.  See R. 748.  He also noted that Franklin's knee reflexes

were absent and his strength in his right shoulder was reduced.[4]  See id.  Accordingly, he stated

that Franklin has "[m]arked limitations in pushing, pulling, or bending using the right upper

extremity. . . . Marked limitation in lifting and carrying using the upper right extremity."  R. 749.

 Franklin, however had no limitations regarding standing, walking, stairs, or other climbing.

These findings are consistent with Dr. Dinovitser's observations and the records highlighted by

Franklin which note limitations in the shoulder, but "mild" or "normal" findings in the knees and

back, see Pl. Mem. at 18-19 (citing R. 219-21, 226-30, 241-43, 249-53, 261-64, 329, 754).

Franklin contends that Dr. Dinovitser's report cannot be squared with the reports of

Dr. Jones or Dr. Uhorchak.  See Pl. Reply at 3.  But these reports do not contradict

Dr. Dinovitser's report either.  Dr. Uhorchak determined that Franklin was "temporarily

disabled" for workers' compensation purposes — which has a different standard and is not

binding on the ALJ, see, e.g., Flanigan v. Colvin, 21 F. Supp. 3d 285, 308 & n.27 (S.D.N.Y.

2014) — based solely on shoulder impairments, see R. 784.  Dr. Jones's report was likewise for

workers' compensation purposes and also addressed only the shoulder impairment.  See R. 767.

Thus, there is no inconsistency between Dr. Dinovitser's report and the other medical opinions in

the record.  Indeed, Dr. Dinovitser's report is more complete than the reports of the other doctors

and is more pertinent to a social security disability determination.

---

[4]  Franklin uses this observation to argue that he might have a "lumbar spine compression
in the L2 3-4 region."  Reply at 2 (citations omitted); see also Pl. Brief at 6 n. 6.  But there is no
evidence from a competent medical source that Dr. Dinovitser or any other doctor placed
significance on these findings.  Just as "an ALJ's ability to make inferences about the functional
limitations caused by an impairment does not extend beyond that of an ordinary layperson,"
Piper v. Comm'r of Soc. Sec., 2020 WL 4499530, at *2 (W.D.N.Y. Aug. 4, 2020) (citation
omitted), a Court similarly cannot be expected to make inferences requiring medical knowledge
in its review of an ALJ's conclusion.  Even the inferences Franklin suggests do not compel
remand.  Thus, for example, Franklin argues that "[a] decreased or absent reflex may mean that
there is compression in the L2, L3, or L4 region," Pl. Reply at 2 n.1, but does not provide any

Franklin argues that "[t]he medical record is clear that [he] had other issues in addition to the severe right shoulder issues that were impacting his ability to perform SGA."  Pl. Mem. at 19.  Specifically, that "the records corroborate Plaintiff's testimony that his knees are worse since being out of work with difficulties standing and walking and difficulties sitting for long periods of time because of lower back impairments."  Id. (citation omitted).  As mentioned, the ALJ did acknowledge Franklin's severe impairments of his knees and back, R. 17, 20-21, 23, and this was reflected in an RFC to perform sedentary-light work as opposed to the medium-to-heavy work Franklin was previously doing, see R. 23.  But there was no medical opinion that any such impairments eliminated Franklin's ability to perform work of any kind.  Further, while there is some support in the record that Franklin sometimes reported worsening pain, other reports did not so reflect, see R. 221 ("Condition is stable" on May 15, 2015); R. 230 ("Today's [May 8, 2015] physical exam was essentially normal."); see also R. 219 (Franklin reported on May 15, 2015, "[s]ince he is not working at this time the knee pain has slightly gotten better for he is not doing the manual labor"), which the ALJ also noted, see R. 20 n.2.

In an attempt to explain the lack of medical evidence regarding Franklin's knee and back impairments, Franklin refers to his lack of insurance.  See Pl. Mem. at 19; Pl. Reply at 2.  But Franklin in fact obtained treatment for knee and back pain.  See, e.g., R. 219-22, 226-30, 241-43, 249-53.  None of these records indicate a level of impairment that contradicts the ALJ's findings. Furthermore, Dr. Dinovitser conducted an examination of Franklin in June 2016, which found no limitations in his knees or back.  See R. 749.  Thus, contrary to Franklin's assertion, see Pl. Mem. at 19, the ALJ's conclusion that his knee and back impairments do not prevent him from working is supported by the medical records and the opinion of Dr. Dinovitser, which was

_____

evidence that the lack of reflexes demonstrates anything that would affect Franklin's RFC.

consistent with other medical opinions.  The ALJ did not conclude that "Plaintiff's impairments

other than his right shoulder do not require medical treatment," see id., but rather, despite these

impairments, Franklin could perform work.

Franklin argues that "the ALJ made no specific findings as to Plaintiff's pain" and that

based on the ALJ's obligation to fully develop the record, "an ALJ must obtain the necessary

evidence from the Plaintiff's physicians and explain his reasons to contradict the Plaintiff's

subjective allegations of pain."  Pl. Mem. at 19 (citing Calzoda v. Astrue, 753 F. Supp. 2d 250

(S.D.N.Y. 2010)).  While the Second Circuit has held that "subjective pain may serve as the

basis for establishing disability, even if such pain is unaccompanied by positive clinical

findings," Taylor v. Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order) (quoting

Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)), in such circumstances, the "ALJ is

nonetheless empowered to exercise discretion to arrive at an independent judgment, in light of

medical findings and other evidence, regarding the true extent of the pain alleged by the

claimant," id. (citation and internal quotation marks omitted).  Where an ALJ rejects a claimant's

testimony regarding the extent of pain as not credible, the basis for the finding "must . . . be set

forth with sufficient specificity to permit intelligible plenary review of the record."  Williams ex

rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec'y of Health &

Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)); accord Snell, 177 F.3d at 135.

Here the ALJ acknowledged that the record supported Franklin's statement that he had

"old" injuries but did "not confirm that his former injuries have been a 'medical issue' during the

period at issue."  R. 21.  Specifically, "[d]espite the foregoing work-related injuries [to knees and

back in 2004 and 2005], the claimant subsequently returned to construction work . . . until the

date of right upper extremity injury on June 13, 2014."  Id.  Even before his shoulder injury, the

ALJ noted that Franklin "registered no complaints with respect to his cervical/lumbar spines and knees, according to the medical record.  For that matter, he registered only minor, intermittent problems in these areas <u>subsequent</u> to June 13, 2014 (and received no specific medical treatment in connection therewith)."  <u>Id.</u> (emphasis in original).  The ALJ also noted that the shoulder injury "had some adverse impact on the cervical spine" but as of March 2015, "only shoulder pain was reported" and "[n]o specific complaints with respect to back pain were identified."  <u>Id.</u> Furthermore, the "May 8, 2015, examination determined that the claimant walked with a normal gait and had <u>no deficits</u> with respect to the cervical spine, although he reported . . . some back pain."  <u>Id.</u> (emphasis in original) (citation omitted).  And the record reflected that Franklin's "knee pain had improved since he stopped doing manual labor."  <u>Id.</u> (citing R. 489).  In light of this evidence, the ALJ could properly choose to not fully credit Franklin's testimony.

Franklin suggests that the ALJ failed to meet his duty to develop the record.  <u>See</u> Pl. Mem. at 19; Pl. Reply at 4-5.  The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination.  42 U.S.C. § 423(d)(5)(B); <u>accord</u> 20 C.F.R. §§ 404.1512(b), 416.912(b).  The regulations define this as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed.  20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1).  "Every reasonable effort" means that the Social Security Administration must:

> make an initial request for evidence from [a claimant's] medical source and, at any time between 10 and 20 calendar days after the initial request . . . make one follow-up request to obtain the medical evidence necessary to make a determination.  The medical source will have a minimum of 10 calendar days from the date of [the SSA's] follow-up request to reply, unless [the SSA's]

experience with that source indicates that a longer period is advisable in a
particular case.

Id. §§ 404.1512(b)(1)(i), 416.912(b)(1)(i); accord Assenheimer v. Comm'r of Soc. Sec., 2015

WL 5707164, at *15 (S.D.N.Y. Sept. 29, 2015).  Where the ALJ fails to develop the record,

remand is appropriate.  Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

At the same time, it is well established that "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the

ALJ is under no obligation to seek additional information in advance of rejecting a benefits

claim."  Rosa, 168 F.3d at 79 n.5 (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).  Here,

the ALJ confirmed with Franklin's counsel at the hearing that the record was complete, R. 38,

and Franklin does not argue that there exist medical records that were not before the ALJ.  Thus,

there was no duty on the ALJ to delve further.  There is no support for Franklin's statement that

the ALJ "was duty-bound to obtain an assessment of [the back and knee] impairments from

another treating or examining source," Pl. Reply at 5, because the medical records were complete

and the ALJ had available the opinions from Dr. Dinovitser and Dr. Jones.  Nevertheless, the

ALJ did seek a medical source statement from Dr. Uhorchak but Dr. Uhorchak did not provide

one.  See R. 32.

Finally, Franklin argues that the ALJ's conclusion regarding available jobs did not

comport with the VE's testimony.  See Pl. Mem. 20-21.  As to the job of host, Franklin contends

that the VE indicated to the ALJ that it involved the host at a restaurant, R. 55, when in fact the

VE cited to a job title that involved a host at a dance hall, R. 56.  See Pl. Mem. at 20-21.  As we

have previously noted, however, a mis-citation of this kind is not grounds for remand.  See

Briscoe v. Astrue, 892 F. Supp. 2d 567, 583 (S.D.N.Y. 2012).  There is nothing in the record to

suggest that Franklin could not perform either host job.  With regard to the job of counter clerk and usher, Franklin believes that the job descriptions show use of upper extremities that are not "suitable for Plaintiff."  Pl. Mem. at 21.  However, the ALJ made clear to the VE that the Franklin had a significant limitation on the use of his right arm.  See R. 54-58.  The VE nonetheless concluded that these jobs could be performed notwithstanding that limitation based on her experience.  See R. 56-60.

Franklin's citation to Lockwood v. Comm'r of Soc. Sec., 914 F.3d 87, 92 (2d Cir. 2019), does not change this conclusion.  Lockwood's RFC restricted him to no overhead reaching and the VE identified jobs with some reaching without explaining the discrepancy.  Id.  Here, however, there was no obvious discrepancy and, while the record is not a model of clarity, the VE did explain that she was relying on her experience in giving her testimony.  See R. 60.  The VE is allowed to rely on her experience in such circumstances.  See, e.g., Biestek, 139 S. Ct. at 1152-53 (VE may invoke "their own experience in job placement or career counseling.") (internal quotation marks and citation omitted); Colvin v. Berryhill, 734 F. App'x 756, 759 (2d Cir. 2018) (where the job description does not specify as to certain specifics, "[t]he law recognizes that vocational experts 'may be useful' in supplementing the definitions in such circumstances.") (citation omitted).

26

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings

(Docket # 23) is granted.  The Clerk is requested to enter judgment and to close the case.

SO ORDERED.

Dated:  August 31, 2020
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge